UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FERRIS VALENTINE,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. MARSHALS, in their individual and official capacities, and DR. MURRAY, in his individual and official capacity,<br><br>Defendants. | 4:20-CV-04206-KES<br><br>1915A SCREENING ORDER FOR DISMISSAL AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff, Ferris Valentine, filed a pro se lawsuit under 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics*, 403 U.S. 388 (1971). Docket 1. Valentine paid his initial partial filing fee and moves for preliminary injunction. Docket 3. The court will now screen Valentine's complaint under 28 U.S.C. § 1915A.

## I. 28 U.S.C. § 1915A Screening

### A. Factual Background

The facts alleged in Valentine's complaint are: that Dr. Murray's February 14, 2020, medical examination was inadequate. Docket 2 at 1-2.[1] At this appointment, Dr. Murray concluded that the lump on Valentine's neck was

[1] Valentine claims that these violations occurred while he was being housed at the Yankton County jail as a federal pre-trial detainee. Docket 1 at 1.

caused by stress and proscribed aspirin. *Id.* at 2. Valentine filed two medical requests in April of 2020 to which there was no response. *Id.* He submitted another medical request on April 30, 2020 and was examined at the hospital on May 14, 2020. *Id.* at 2-3. Valentine claims that the doctor diagnosed him with a torn rotator cuff. *Id.* at 3. A medical report shows that on May 14, 2020, Theresa C. Hansen, APRN, diagnosed Valentine with impingement syndrome in his left shoulder. Docket 1-2 at 1. Hansen reported that "[a]fter discussing possible treatment plans with the patient, we opted to proceed with injection today. Suspect rotator cuff involvement based on exam and symptoms today. . . . May need physical therapy and/or MRI with Ortho referral at some point in the future. He was agreeable with this plan." *Id.*

Dr. Murray had a follow-up with Valentine on May 21, 2020, where Dr. Murray minimized the "extent of [the] injury by saying there [was] no redness[,]" discoloration, and denied to order an MRI. Docket 2 at 3-4. "Dr. Murray replied, MRI is not going to happen. Plaintiff understood medical treatment was being denied." *Id.* at 4. After Dr. Murray ordered an x-ray, the results were deemed inconclusive and Dr. Murray reported that Valentine was fine. *Id.* Valentine asserts that Dr. Murray has acted wantonly and has intentionally misdiagnosed him. *Id.* He claims that Dr. Murray's misdiagnosis has prevented him from receiving the correct diagnosis and treatment and the United States Marshals are denying medical treatment because of the misdiagnosis. *Id.*

On July 24, 2020, Valentine asserts that when he complained of neck pain, eye pressure, and headaches, Dr. Murray misdiagnosed him with acid reflux. *Id.* at 5. Valentine refused to take the medicine proscribed to him. *Id.* Valentine claims that he has requested to be seen again and the Marshals have not allowed him to be added to the list to be examined. *Id.* at 6. On October 20, 2020, Valentine had blood drawn by a nurse. *Id.* at 7. He claims that the blood draw resulted in "painful suffering" and complained that the nurse used a syringe instead of the required butterfly needle. *Id.* Valentine asserts that this first blood draw attempt collapsed his vein and the nurse used the same needle on his other arm. *Id.* "The syringe cy[]linder began filling with blood and the nurse inconspic[uously] pulled back on the pump to allow [the] cy[]linder to fill with blood. Plaintiff realized something amiss. There were empty blood vile tubes on the table" that were not being used. *Id.* Valentine requested to watch the surveillance video and claims the nurse was drawing blood into a hypodermic syringe and then "squirting the blood into blood vile tubes." *Id.* at 7-8. His request was denied. *Id.* at 8-9. An officer reviewed the video and asserts that Valentine's allegation was not supported by the video evidence. *Id.* at 9. Valentine felt burning in his neck after the blood draw. *Id.*

On October 28, 2020, Dr. Murray concluded that Valentine's vein had not collapsed and his neck pain was not related to the blood draw. *See id.* at 9-10. Dr. Murray then proscribed a muscle relaxant for Valentine's shoulder pain. *Id.* at 10. Valentine claims that a tumor is pushing on his spine and is causing pain in his neck. *Id.* at 13. Valentine has had sores in his mouth since

2018 and believes that he has throat cancer. *Id.* Valentine claims that his "symptoms are increasingly getting worse" and it is a "direct result of not being allowed to be examined to determine a diagnosis." *Id.* Valentine asserts that he has not been allowed to receive medical treatment to access whether his neck pain is a tumor. *Id.* at 15-16. The Marshals allegedly "have to authorize any medical approvals" and the Marshals "will not approve." Docket 1 at 4. He sues the Marshals and Dr. Murray in their individual and official capacities. *Id.* at 2. Valentine alleges that his Fifth and Eighth Amendment rights have been violated and he seeks injunctive relief. *Id.* at 7.

**B. Legal Background**

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "[are] (1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

**C. Legal Analysis**

**1. Fifth Amendment**

An implied damages remedy through a *Bivens* action has been recognized for a violation of the Due Process Clause under the Fifth Amendment. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001) (citing *Davis v. Passman*, 442 U.S. 288, 248-49 (1979) (recognizing a Fifth Amendment equal protection claim under *Bivens*)).

Valentine vaguely mentions that his due process rights were violated by Dr. Murray. Docket 2 at 14-15. He asserts that he was not allowed to investigate and "has not been allowed to determine if the lump on [his] neck and the c[h]ronic neck pain is a tumor growing." *Id.* at 15-16. Liberally construing

Valentine's alleged facts, he asserts that his procedural due process rights have been violated. "[T]he constitutional right to due process is only implicated if a 'deprivation[] of life, liberty or property . . . is at stake.' " *United States v. Johnson*, 703 F.3d 464, 469 (8th Cir. 2013) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221(2005)). Valentine's assertion that he was not able to investigate his complaint regarding his blood draw or Dr. Murray's alleged misdiagnosis is not sufficient to show that there has been a deprivation of life, liberty, or property. Valentine's procedural due process claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

Valentine claims that his right to equal protection under the law has been violated. Docket 1 at 6. "In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.' " *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (quoting *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006)). Classifications based on religion, alienage, nationality, or race have been considered a suspect classification. *See Graham v. Richardson*, 403 U.S. 365, 372 (1971); *see also Weems*, 453 F.3d at 1016. The plaintiff must allege facts that show defendants' action were motivated by intentional or purposeful discrimination. *See Patel*, 515 F.3d at 816 (citing *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007)). Valentine does not assert specific facts but rather cites to pages 1-16 in Docket 2. Liberally construing Valentine's alleged facts in his favor, he asserts that other inmates are receiving medical care and he is not.

*See* Docket 2 at 5-6. Valentine aided a "mexican with the unit" to fill out a medical request. *Id.* at 5. After the "mexican national was examined and transported to the [h]ospital. Plaintiff was not examined." *Id.* at 6. Even after liberal construction, Valentine has not alleged facts to show that his alleged denial of medical care is "based upon" a "suspect classification or a fundamental right." *Patel*, 515 F.3d at 815. Valentine also fails to allege facts to that the alleged actions were motivated by intentional discrimination. Thus, Valentine's equal protection claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

**2. Eighth Amendment Medical Indifference**

A *Bivens* remedy is available for a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017). A plaintiff must demonstrate an objective and subjective component to sufficiently allege that prison officials were deliberately indifferent to his medical needs: "(1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F. 3d. 1234, 1239 (8th Cir. 1997) (internal citations omitted). Medical needs must be serious and "[t]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Id.* "In determining whether the inmate has an objectively serious medical need, . . . the need or the deprivation alleged must be *either obvious to*

*the layperson* or supported by medical evidence, like a physician's diagnosis." *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999) (internal citations omitted and italics in original).

To demonstrate deliberate indifference, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995)). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976).

Valentine claims that a physician determined on May 14, 2020, that he had a rotator cuff tear but the medical report states that he was diagnosed with impingement syndrome in his left shoulder. *See* Docket 2 at 3; Docket 1-2 at 1, 3, 5. At his follow-up appointment, Dr. Murray refused to enter a medical order for an MRI and instead ordered an x-ray. Docket 2 at 4. Valentine claims that through Dr. Murray's misdiagnosis, the Marshals are denying medical treatment to him. *Id.* Six days after his blood draw, Dr. Murray evaluated Valentine and determined that his vein had not collapsed and his neck pain was not related to the blood draw. *See id.* at 9-10. Dr. Murray proscribed a muscle relaxant for Valentine's shoulder pain. *Id.* at 10. Valentine asserts that

defendants are refusing to examine the lump on his neck that he believes is a tumor. *Id.* at 13. He also asserts that he has throat cancer and has had sores in his mouth since 2018 that have not been examined. *Id.* at 13.

Valentine's assertions do not arise to the level of medical indifference. Valentine claims that Dr. Murray has intentionally misdiagnosed his symptoms, however a review of Valentine's alleged facts show that Valentine simply disagrees with Dr. Murray's diagnoses. Valentine was diagnosed with shoulder impingement and disagreed with Dr. Murray's x-ray order. *See* Docket 1-2 at 1; Docket 2 at 4. Valentine wanted to receive an MRI. Docket 2 at 4. When Dr. Murray assessed Valentine's neck pain due to the blood draw, Valentine asserts that Dr. Murray acknowledged that he had a lump on his neck, but Dr. Murray said the lump would not have been caused by his blood draw. *Id.* at 9-10. Valentine believes he has a tumor in his neck and that he has throat cancer since 2018. *Id.* at 13. The alleged facts support that Dr. Murray has addressed Valentine's neck pain. *See id.* at 10. Valentine does not allege sufficient facts that defendants knew that he had mouth sores that created an "excessive risk to the inmate's health" and then failed to treat the sores. *Dulany,* 132 F. 3d. at 1239.

Valentine has not alleged facts that Dr. Murray or the Marshals knew of a condition that created an excessive risk to his health and then failed to act. At this point, Valentine has not asserted facts that support that he suffered from an objectively serious medical need. His medical assertions are not supported by medical evidence (a physician's diagnosis) and the facts do not support a

showing that the need is obvious to a layperson. *Roberson*, 198 F.3d at 648. Further, even if Valentine had alleged facts to support that he suffered from an objectively serious medical need, he has not stated facts to show that defendants were deliberately indifferent. At most, Valentine has asserted disagreement about his treatments or disagreement with the medical assessments. Valentine's Eighth Amendment claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

## II. Preliminary Injunction

Valentine moves for a preliminary injunction. Docket 3. He claims that he has been irreparably harmed and that the harm "will continue [] if injunctive relief is not granted." *Id.* at 1. Valentine alleges that Dr. Murray has denied him medical treatment and that his pain is getting worse. *Id.* at 2. He asserts that the Marshals' policy is a "death decree." *Id.* Valentine has complained of "neck pain and [a] possible tumor since late 2019" and that the Marshals have refused to allow him to be examined. *Id.* at 3. Valentine claims that his:

> condition has progressively gotten worse, sores in mouth, painful neck pain, believes the possible tumor is causing the neck pain, there's nerve problems causing back to feel like it is on fire, pressure on eyes, headaches, mucous and sinus problems blowing nose daily with slight blood within. Plaintiff ['s] breathing is beginning to feel labored. Plaintiff['s] rot[ator]-cuff has not healed and still in slight pain.

*Id.* at 3-4. Valentine asks the court to order the Marshals to allow him to receive an MRI of his shoulder and ensure that his examination is not done by Dr. Murray. *Id.* at 4.

"A preliminary injunction is an extraordinary remedy[.]" *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citation omitted); *see also Hughbanks v. Dooley*, 788 F. Supp. 2d 988, 992 (D.S.D. 2011) ("[I]n the prison setting, a request for a preliminary injunction 'must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.' ") (quoting *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Goff*, 60 F.3d at 520. To determine whether the issuance of a preliminary injunction is appropriate, the court considers the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

The court asks "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113. Although no single factor is determinative, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Dataphase*, 640 F.2d at 114 n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction."). To demonstrate irreparable harm, plaintiff must show that the harm is certain, great and "of such imminence that there is a clear and present

need for equitable relief[.]" *Packard Elevator v. Interstate Com. Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986). Notably, "plaintiff must make a showing of actual, substantial harm resulting from the alleged infringement." *Travelers Express Co. v. Transaction Tracking Tech., Inc.*, 305 F. Supp. 2d 1090, 1095 (D. Minn. 2003) (citation omitted).

Here, Valentine's assertion that his neck has not been examined is not supported by the record that he has provided. *See* Docket 2 at 9-13. Dr. Murray addressed his neck pain in 2020 and also refused to order an MRI because he did not see discoloration on Valentine's arm. *Id.* at 4, 9-13. Valentine has not shown irreparable harm that is certain "and of such imminence that there is a clear and present need for equitable relief[.]" *Packard*, 782 F.2d at 115. Valentine has not met his burden to prove that a preliminary injunction should be issued. His motion for preliminary injunction (Docket 3) is denied.

Thus, it is ORDERED:

1. That Valentine's complaint is dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

2. That Valentine's motion for preliminary injunction (Docket 3) is denied.

Dated: February 19, 2021

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE